UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

DONALD V. SNOWDEN,

    Petitioner,

        v.

Civil No. 3:24-cv-01061-JPG

UNITED STATES OF AMERICA,

Criminal No. 4:19-cr-40081-JPG

    Respondent.

**MEMORANDUM AND ORDER**

This matter comes before the Court on Donald Snowden's motion to vacate judgment, appoint counsel, revive his § 2255 petition, supplement his § 2255 petition, and set an expedited evidentiary hearing. (Doc. 6). The Court **VACATES** the judgment, (Doc. 5), **GRANTS** the motion to supplement, **DENIES** appointment of counsel, **DENIES** his request for an expedited evidentiary hearing, **DENIES** his § 2255 petition, and **DECLINES** to issue a certificate of appealability.

## I.    BACKGROUND

On September 1, 2019, Snowden was indicted on one count of distribution of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A). (Doc. 1). On June 9, 2020, a second superseding indictment charged him and his accomplice, Kevin McBride, with one count of conspiracy to distribute methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), 846, 841(b)(1)(A)—in addition to the distribution of methamphetamine he was initially indicted for. (Doc. 83). On August 11, 2022, the Court sentenced Snowden to serve 360 months concurrently on both counts of the superseding indictment. (Doc. 311). Snowden appealed, (Doc. 315), and his case was before the Court of Appeals, (7th Cir., Appeal No. 22-2426), when Snowden filed his first motion for a § 2255. (Doc. 1).

In his first § 2255 motion, Snowden argued, inter alia, that he was unlawfully convicted due to evidentiary issues that violated his constitutional rights. (Doc. 1). As Snowden himself pointed out in his motion, all the issues he raised in his § 2255 were on appeal before the appellate court and, therefore, his motion was not ripe. (Doc. 2). The Court ordered Snowden to show cause as to why his § 2255 should not be dismissed for being unripe. (Id.). Snowden responded to the Order to Show Cause by asking for leave to withdraw his motion. (Doc. 3). The Court granted that motion and directed the clerk to enter judgment of dismissal without prejudice. (Doc. 4).

On May 6, 2024, the Court of Appeals for the Seventh Circuit dismissed Snowden's appeal and granted his counsel's request to withdraw. (7th Cir., Appeal No. 22-2426, Doc. 71). Following that denial, Snowden filed his current motion. (Doc. 6). In his current motion, he requests that the Court vacate judgment, revive his § 2255 petition, appoint counsel, allow him to supplement his § 2255 petition, and set an expedited evidentiary hearing. His filing raises identical arguments to his first § 2255 petition, but he rephrases his claims in the terms of ineffective assistance of counsel ("IAC"). Additionally, he advances a number of new arguments alleging his appellate counsel was likewise ineffective. (Doc. 6). Snowden makes approximately twelve claims:

1. IAC of Trial Counsel for failure to investigate evidence.

2. IAC of Trial Counsel for filing a motion that ultimately prompted the Government to file an additional charge.

3. (a.)   IAC of Trial Counsel for failing to recommend a mental health evaluation.

   (b.)   IAC of Trial Counsel for not disclosing evidence to Snowden.

2

4. IAC of Trial Counsel for filing a motion to suppress that ultimately prompted the Government to file an additional charge.

5. IAC of Trial Counsel for failing to investigate exculpatory evidence.

6. IAC of Appellate Counsel for not investigating claims by Trial Counsel and demanding briefing and remand.

7. IAC of Appellate Counsel for failing to address and object to trial objections.

8. IAC of Appellate Counsel for failing to argue drug purity lab results.

9. IAC of Appellate Counsel for failing to investigate a Fourth Amendment Right violation by eavesdropping from officers.

10. IAC of Appellate Counsel for failing to argue that Snowden's post-Miranda statements should have been suppressed.

11. Unconstitutional sentencing disparity.

12. IAC of Trial Counsel for not objecting to a lack of detention hearing.

Attached to many of these claims is the argument that the outcome "could have been different" had his trial or appellate counsel acted differently.

## II.    **LEGAL STANDARD**

The Court must grant a § 2255 motion when a petitioner's "sentence was imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255(a). However, "[r]elief under § 2255 is available 'only in extraordinary situations, such as an error of constitutional or jurisdictional magnitude or where a fundamental defect has occurred which results in a complete miscarriage of justice.'" *United States v. Coleman*, 763 F.3d 706, 708 (7th Cir. 2014) (quoting *Blake v. United States*, 723 F.3d 870, 878-79 (7th Cir. 2013)). It is proper to

deny a § 2255 motion without an evidentiary hearing if "the motion and the files and records of the case conclusively demonstrate that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *see Shipman v. United States*, 925 F.3d 938, 943 (7th Cir. 2019).

The Sixth Amendment to the Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. CONST. amend. VI. This right to assistance of counsel encompasses the right to effective assistance of counsel. *McMann v. Richardson*, 397 U.S. 759, 771, n. 14 (1970); *Watson v. Anglin*, 560 F.3d 687, 690 (7th Cir. 2009). A party claiming ineffective assistance of counsel bears the burden of showing (1) that his trial counsel's performance fell below objective standards for reasonably effective representation and (2) that this deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 688-94 (1984); *Groves v. United States*, 755 F.3d 588, 591 (7th Cir. 2014); *United States v. Jones*, 635 F.3d 909, 915 (7th Cir. 2011); *Wyatt v. United States*, 574 F.3d 455, 457 (7th Cir. 2009).

To satisfy the first prong of the *Strickland* test, the petitioner must direct the Court to specific acts or omissions of his counsel. *Wyatt*, 574 F.3d at 458. The Court must then consider whether, in light of all of the circumstances, counsel's performance was outside the wide range of professionally competent assistance. *Id*. To satisfy the second prong of the Strickland test, the plaintiff "must demonstrate 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding *would* have been different." *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 694) (emphasis added); *accord Groves*, 755 F.3d at 591; *Jones*, 635 F.3d at 915. Notably, the question is not whether the outcome *could* have been different, but whether the outcome *would* have been different; "could" denotes a mere possibility

that the result may have been different whereas "would" denotes an at-least reasonable probability that the result may have been different. "A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Id*. A mere possibility that the outcome could have been different is not enough to establish prejudice. *United States v. Ruzzano*, 247 F.3d 688, 696–97 (7th Cir. 2001); *Miller v. Anderson*, 255 F.3d 455, 459 (7th Cir. 2001).

A defendant's right to effective assistance of counsel does not mean that a defendant is entitled to dictate which arguments their attorney should make before a court. *Jones v. Barnes*, 463 U.S. 745 (1983) ("Neither [*Anders v. California*, 386 U.S. 738 (1967)] nor any other decision of this Court suggests . . . that the indigent defendant has a constitutional right to compel appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points.").

Typically, in cases where a petitioner alleges they received ineffective assistance of counsel, the burden for requesting an evidentiary hearing is relatively light. However, a *light* burden is not *no* burden. When the record of a case "conclusively show[s]" that a petitioner is not entitled to relief, the court may deny the request for an evidentiary hearing. *Anderson v. United States*, 865 F.3d 914, 919 (7th Cir. 2017); *Torres-Chavez v. United States*, 828 F.3d 582, 586 (7th Cir. 2016). This form of screening is also prescribed by the Rules Governing Section 2255 Proceedings for the United States District Courts (hereinafter "Habeas Rules").

### III.   <u>ANALYSIS</u>

Snowden has raised approximately twelve claims in his habeas petition. Snowden has already argued most of these issues before this Court at trial, before the Court of Appeals, and makes many of those same arguments before this Court again in the form of a § 2255. Now,

however, he has couched his objections in the language of ineffective assistance of counsel. Snowden's arguments and claims are identical—down to the specific document references. He presents no new evidence for his objections at the trial level; he simply wishes to argue the same points again and again. Additionally, Snowden levies IAC claims against his appellate counsel.

The Court warned Snowden that prisoners are only entitled to one § 2255 challenge as a matter of right, yet Snowden insists on attacking the evidence for his conviction fresh off appeal. Dressing the same arguments in the language of ineffective assistance of counsel is unpersuasive—a hog in armor is still but a hog—particularly when the Appellate Court has reviewed his case and found his claims meritless. Moreover, some of Snowden's claims are plainly not cognizable under a § 2255 petition. The Court will analyze his claims as to trial counsel, analyze his claims as to his appellate counsel, and then address any remaining arguments. The Court will address each argument individually.

### A. <u>Ineffective Assistance of Trial Counsel</u>

### 1. IAC of Trial Counsel for failure to investigate evidence.

Snowden argues that his trial counsel was ineffective because he failed to obtain evidence that the prosecution was going to use at trial. The evidence that Snowden's lawyer allegedly failed to investigate or obtain was evidence of the methamphetamine's existence. Specifically, Snowden takes umbrage with the Government photographing the methamphetamine without allowing him to view the drugs first. Snowden objected to the entry of this evidence at trial, but the Court overruled his objection. Snowden also raised the issue on appeal, to no avail.

While a defendant is entitled to know the evidence that will be used against them in a criminal trial, there is no indication—and Snowden does not allege—that the existence of the

methamphetamine, or the fact that the drugs were in the Government's possession, was concealed from him. The entry of the drugs into evidence was not a surprise; especially given that Snowden's trial itself centered around those drugs. It is unclear what was objectionable about the entry of this evidence or what his attorney should have investigated. Snowden's claim essentially boils down to "those are not my drugs. I have never seen those drugs." Even were the Court to believe that age-old refrain, Snowden fails to demonstrate how this rendered his counsel ineffective or what prejudice he suffered as a result. He objected to the entry of this evidence at trial; the Court heard that objection and overruled it. There would be no difference in the outcome if Snowden had been allowed to view the drugs before the photos were taken—if he even had a right to view them. By finding him guilty, the jury determined that the evidence presented was sufficient to establish that Snowden possessed those drugs. Snowden may disagree with that finding, but a § 2255 petition is not the proper vehicle for disputing a jury's factual finding that the drugs depicted in a photograph were his drugs.

There is no indication that his attorney's performance fell below an objective standard of reasonableness nor any indication that he suffered prejudice as a result. Consequently, his first claim is meritless.

## 2. IAC of Trial Counsel for filing a motion that ultimately prompted the Government to file an additional charge.

Snowden argues that his trial counsel was ineffective because he filed a motion to dismiss on the basis of selective prosecution. Snowden believes that this action prompted retaliation from the Government because the Government added an additional charge after the motion was filed. Snowden believes this disadvantaged him by making a plea deal more difficult.

Firstly, there is no clear causal connection between his attorney's filing of a selective prosecution motion and the Government's decision to add an additional charge; the mere fact that the additional charge came after his attorney's motion is insufficient.

Secondly, even were the Court to believe there is some causal connection, if his attorney believed that Snowden was the target of selective prosecution, his attorney was not deficient for making the strategic decision to move for dismissal on that basis. His attorney has no control or power over the Government's charging decisions. Still, Snowden has failed to establish that there is a reasonable probability that the outcome would have been different if his attorney had not filed that motion. It is also unclear what prejudice he suffered. Snowden argues that the additional charge made it more difficult for him to negotiate a plea agreement. Many defendants believe they deserve a better deal than they are offered; that erroneous belief does not make their counsel ineffective.

There is no indication that Snowden's attorney's performance by filing a motion to dismiss for selective prosecution fell below an objective standard of reasonableness, nor is there any indication that Snowden was prejudiced by his attorney's performance. As a result, this claim is meritless.

### 3. IAC of Trial Counsel for failing to recommend a mental health evaluation and for not disclosing drug evidence to Snowden.

Snowden alleges that his counsel was ineffective because the Court recommended a possible mental health evaluation for him but his counsel did not agree that an evaluation was needed. Additionally, Snowden alleges that his attorney "never provided Snowden with the drug evidence so [he] didn't believe the government had any evidence of 50 grams [of

methamphetamine] or more." (Doc. 6).

Snowden's claim that he was unaware the Government had any evidence because he had not seen the evidence first-hand before trial is obviously frivolous. As for his mental health evaluation, Snowden's *extensive* pro se filings may be largely frivolous, but they are coherent enough for the Court to conclude that Snowden is competent. Therefore, his attorney recommending him for a mental health evaluation would have changed nothing. In fact, if Snowden's attorney knew that Snowden was competent to stand trial, then his attorney was not ineffective by being candid with this Court and not wasting time and resources by recommending an evaluation when he knew the evaluation was meritless.

Contrary to Snowden's assertion that "[h]ad [he] seen the evidence, the outcome may have been different," the Court does not see how Snowden was prejudiced by not having a mental health evaluation or how his attorney failed to disclose evidence. Therefore, for both of these claims, Snowden's attorney's performance did not fall below an objective standard of reasonableness, nor did his attorney's performance prejudice him. Thus, these claims are meritless.

**4. IAC of Trial Counsel for filing a motion to suppress that ultimately prompted the Government to file an additional charge.**

Snowden claims that his attorney was ineffective when he filed a motion to suppress drug evidence. In that motion, his attorney argued that officers had not seen Snowden in possession of the drugs or the container with the drugs. Similar to his claim as to the motion to dismiss for selective prosecution, Snowden argues that the Government's additional conspiracy charge was retaliatory and that it is his attorney's fault for filing a motion that incurred that retaliation.

9

Again, Snowden's attorney is not responsible for the Government's charging decisions. Similar two his earlier claims, there is no causal connection between the filing of the motion and the Government's charging decision. Snowden argues that the motion was frivolous, but he himself has claimed that there was no evidence linking him to the drugs. There is no indication that the motion was frivolous or that the Government retaliated. Even if Snowden could establish his attorney's filing of that motion fell below an objective standard of reasonableness, he has failed to establish that he was prejudiced by that decision. Consequently, this claim is meritless.

**5. IAC of Trial Counsel for failing to investigate exculpatory evidence.**

Snowden argues that his attorney was ineffective by allegedly not investigating exculpatory evidence in the public record. Snowden believes that, because he was indicted before the laboratory tested the methamphetamine's purity, the mere fact that the indictment preceded the lab results is exculpatory evidence that was withheld from him. He argues that because his attorney filed several motions on his behalf and participated in extensive discussions with the Government, his attorney had ample opportunity to investigate this "exculpatory evidence" but failed to do so.

Exculpatory evidence, by definition, is evidence that *exculpates* a defendant, i.e., it tends to establish a defendant's *innocence*. *See Brady v. Maryland*, 373 U.S. 83, 89 (1963).

Whether the drug lab performed the purity tests before or after Snowden's indictment does not bear on Snowden's innocence or guilt. On that basis alone, his claim is frivolous. However, even if the timing of the drug tests was somehow exculpatory, that evidence was provided to his attorney by the Government. Whether his attorney elects to pursue that issue in motion practice is a strategic decision left to his sound discretion—not Snowden's.

However, even if his attorney had pursued this issue, there would have been no difference in the outcome; it is highly unlikely that a criminal court would throw out an entire case because drug purity testing came after the indictment. For a multitude of reasons, this claim is frivolous as well; Snowden's attorney's performance did not fall below an objective standard of reasonableness, nor was Snowden prejudiced by his attorney's performance.

### 12. IAC of Trial Counsel for not objecting to a lack of detention hearing[1]

Snowden argues that his trial counsel was ineffective for not disputing Snowden's detention and not allowing Snowden to have a detention hearing. Snowden argues that he should have been given the opportunity to dispute the evidence at the detention hearing but that his attorney failed to dispute that evidence or dispute his detention.

Snowden was not unlawfully detained. Even if he was unlawfully detained, the detention hearing is not the appropriate venue for litigating the merits of a case. Even if it were an appropriate venue for litigating the merits, a § 2255 petition is not the appropriate vehicle for challenging a pretrial detention. Even if a § 2255 petition was the appropriate vehicle for challenging a pretrial detention, Snowden was detained before his attorney was appointed and before his attorney moved for bond. Even if his attorney had not moved for bond, Snowden has failed to allege that the outcome would have been different if he was let out on bond—unless he is implying that he would have jumped bail. If he is implying he would have jumped bail, he only affirms the decision of the Court to keep him detained and deny bond. Suffice it to say, Snowden's attorney's performance did not fall below an objective standard of reasonableness nor

---

[1] While this claim is his sixth claim against trial counsel, Snowden organized his motion in such a way that this complaint in particular appears twelfth, rather than sixth. To avoid confusion as to which claims the Court is referencing, the Court will retain Snowden's enumeration.

did his attorney's performance prejudice him; this claim is also frivolous.

### Trial Counsel Analysis Summary

Snowden's claims against his attorney are manifestly the issues he has already presented and have been disregarded. Merely relabeling his failed attempts to attack his conviction as ineffective assistance of counsel claims is inadequate and unpersuasive. Snowden wants a second bite at the apple; he shall not get one.

Snowden has failed to establish that his attorney's performance fell below an objective standard of reasonableness. In fact, at least two of Snowden's claims arise from his attorney zealously advocating on his behalf by filing motions to dismiss and motions to suppress evidence. Snowden unintentionally provides a description of the efforts his attorney took to represent him: "Mr. Sims filed a motion for bond, and a reconsideration for bond, a selective prosecution and a suppression of drugs for Snowden on Snowden's behalf." This is not the description of an attorney whose representation fell below an objective standard of reasonableness.

Snowden has also failed to establish that he was prejudiced by his attorney's conduct. The standard for establishing prejudice is not whether the outcome "could have" been different, but whether there was a *high likelihood* that the outcome would have been different, such that it undermines the confidence in the outcome; Snowden has failed to make that showing. Had his attorney acted the way Snowden wanted him to act, made the arguments Snowden wanted him to make, or refrain from filing motions Snowden wanted him to refrain from filing; there is no indication that the outcome would have been different.

For all these reasons, Snowden's ineffective assistance of counsel claims against his trial

counsel are meritless.

### B.  Ineffective Assistance of Appellate Counsel

### 6.  IAC of Appellate Counsel for not investigating claims by Trial Counsel and demanding briefing and remand.

Snowden argues that his appellate counsel was ineffective for not investigating his trial attorney's motion to suppress evidence of methamphetamine. He argues that because his attorney alleged in the motion that there were no eyewitnesses to Snowden's possession, his appellate counsel was obliged to investigate that issue. Had his appellate counsel investigated this matter, Snowden claims the outcome could have been different.

It is ironic that, in one breath, Snowden accuses his trial counsel of being ineffective for filing the motion to suppress and then, in the next, accuses his appellate counsel of being ineffective for failing to investigate the motion to suppress. Setting aside the fact that Snowden believes his trial counsel was ineffective for raising that argument and also believes his appellate counsel was ineffective for *not* raising that same argument, Snowden has failed to establish that his appellate counsel was ineffective here.

There is no indication that Snowden's appellate counsel was unaware of the evidentiary arguments his trial counsel made. In fact, appellate attorneys are obliged to review the record of the trial when arguing on appeal. If an appellate attorney determines that the argument is meritless, they are not obliged to raise it. It is also not the responsibility of an appellate attorney to investigate matters outside the record—an appellate court is not a forum for trying a case a second time.

Ultimately, whether there was eyewitness testimony of Snowden's possession or not, the

question of possession was a factual one. These were arguments and issues that were raised at trial. The jury determined that Snowden possessed the drugs, regardless of the strength of the evidence presented. The standard for overturning a jury verdict is high; Snowden failed to meet that standard.

The Court was unconvinced of this argument at trial and an appellate attorney's decision to select certain issues to raise is their strategic decision—not Snowden's. Even if his attorney had raised the issue, Snowden has failed to show that there is a high likelihood that the outcome would have been different. Therefore, this claim is frivolous.

### 7. IAC of Appellate Counsel for failing to address and object to trial objections.

Snowden next alleges that his appellate counsel was ineffective for "not addressing trial objections and admissions of trial evidence." (Doc. 6). Specifically, Snowden takes umbrage with his appellate attorney's refusal to raise objections to the entry of drug evidence, officer testimony, "trial exhibits[,] guns, scales, and all objections that should not have been overruled." (Id.).

Snowden's claims are meritless for a couple reasons. Again, the appellate court is not the appropriate forum for retrying a case. Attorneys are not required to throw every single argument possible at the appellate court in the hope that one might stick. Not only are appellate attorneys *not* required to advance every possible argument, an attorney would be ill-advised to do so. An appellate attorney especially has limited time to speak at oral argument and a limited number of pages in their briefs. One of the quintessential responsibilities an attorney has is to sort through which legal arguments have the best chance at success for their client. A skilled attorney knows that raising every possible argument sacrifices focus and attention on arguments that have greater

14

merit or have a higher chance at success.

However, even if an appellate attorney believes the outcome of the objection should have been different at trial, an attorney may not believe there is a strong enough argument to overcome the deference required by the appropriate standard of review. Consequently, an appellate attorney's decision not to raise some nonfrivolous arguments on appeal is strategic. Even had Snowden's attorney raised this argument, this Court remains unconvinced that there is a high likelihood the outcome would have been different.

Therefore, Snowden has failed to demonstrate that his appellate attorney's performance fell below an objective standard of reasonableness, nor has he shown he was prejudiced by his appellate attorney's refusal to raise these frivolous objections. As a result, this claim is meritless.

**8.  IAC of Appellate Counsel for failing to argue drug purity lab results.**

Snowden next argues that his appellate counsel was ineffective for failing to dispute the drug lab results. Snowden believes that, because some of the drugs had to be pulverized for testing, that the condition of the drugs was permanently altered and therefore the evidence is inadmissible. Essentially, he believes that because the lab did not test *all* of the drugs, that there is some uncertainty of whether the drugs amounted to more than fifty grams of methamphetamine.

Drugs are tested for representative sampling. A chemist testified to their method of testing. Snowden had an opportunity to argue that the sampling was insufficient. It is for the jury to determine whether Snowden possessed that amount of methamphetamine. The jury determined that the chemist's testimony on the method of representative sampling was sufficient to determine the requisite purity of the methamphetamine in Snowden's possession. This is a

frivolous argument and Snowden's appellate attorney is not deficient for refusing to raise it.

Even if the Court had indulged Snowden and tested the entire amount of methamphetamine, the Court finds it highly unlikely that there would have been less than fifty grams of actual methamphetamine. Snowden's claim that the purity "could have" been different epitomizes the nature of his claims. There are infinite possibilities; it is certainly *possible* that the rest of the drugs were not pure enough to sustain a conviction and that all the methamphetamine just so happened to find its way into the chemist's sample—but that is not reasonable. Our justice system does not demand that a defendant's guilt be proven as an absolute certainty; our justice system demands that a defendant's guilt be proven beyond a *reasonable* doubt—Snowden fails to grasp this concept.

Regardless, Snowden has failed to establish that his appellate attorney's decision to not dispute the drug lab purity fell below an objective standard of reasonableness, nor has he shown that he was prejudiced by that decision. Therefore, this claim is meritless.

9. **IAC of Appellate Counsel for failing to investigate a Fourth Amendment Right violation by eavesdropping from officers.**

Snowden argues that his Fourth Amendment rights were violated at trial because one of the devices used to gather evidence was property of the Carbondale police department, not the federal government. Snowden believes, because he was charged in a federal case, that the Carbondale police department would have to issue an "authorization to eavesdrop." Snowden argues that the practice violates Illinois's eavesdropping law. On this basis he also disputes the recorded video and audio. His appellate counsel's refusal to raise this argument, he believes, amounts to ineffective assistance of counsel.

16

Snowden's argument is clearly erroneous. The Illinois eavesdropping statute provides explicit exemptions for law enforcement officers who have been authorized to use such a device. 720 ILL. COMP. STAT. 5/14-2 (2016). There is obviously no general prohibition on federal agencies using state evidence and state devices. Snowden's attorney's refusal to raise this frivolous argument did not fall below an objective standard of reasonableness nor would raising this meritless argument have had any effect on the proceedings. Thus, this claim is meritless.

### 10. IAC of Appellate Counsel for failing to argue that Snowden's post-Miranda statements should have been suppressed.

Snowden argues that his appellate counsel was ineffective for failing to argue that his post-Miranda statements should be suppressed because those statements were "involuntary."

There is no indication Snowden's decision to engage in a post-Miranda interview was in any way involuntary. This argument was raised before the Court at trial and the Court rejected it. Without any evidence of involuntary statements, his post-Miranda interview is valid and disputing that on appeal without any evidence to the contrary would have been frivolous.

Snowden's attorney's decision to not pursue the frivolous argument that his post-Miranda statements were inadmissible did not fall below an objective standard of reasonableness, nor did his attorney's refusal to raise that argument prejudice him. Therefore, this claim is meritless.

### 11. Unconstitutional Sentencing Disparity

Snowden argues that there is an unconstitutional sentencing disparity between his co-defendant and himself. Snowden argues the disparity arises from an alleged erroneous application of the career offender enhancement. He believes that he should not have been given the career offender enhancement if there were no role adjustments. Additionally, he alleges that

17

he was "enhanced twice[,] once for gun and once for drug enhancement." (Doc. 6).

Generally, as the Guidelines are advisory, an error in a guideline calculation is not grounds for collateral attack in a § 2255 petition. A defendant may have grounds to collaterally attack their sentence if a guideline enhancement was improper and their counsel did not raise that issue, but that is not the case here.

Snowden received two separate enhancements: a career offender enhancement under U.S.S.G. § 4B1.1 and a specific offense enhancement for having a firearm related to the offense under U.S.S.G. § 2D1.1(b)(1); both were properly applied.

Under §§ 4B1.1, 4B1.2, a defendant may have their sentenced enhanced if they have (i.) at least two prior convictions, (ii.) as an adult, (iii.) that were either a crime of violence or a controlled substance violation under state or federal law, and (iv.) were each punishable by one year or more in prison. §§ 4B1.1, 4B1.2. (hereinafter "Chapter Four enhancement").

In Snowden's presentence investigation report, Probation provides five state convictions that qualified him for a Chapter Four enhancement, each in violation of 720 ILL. COMP. STAT. 570/401 (2018):

- 02-CF-96 (possession with intent to deliver less than 1.5 grams of cocaine)

- 05-CF-155 (delivery of more than 1 gram but less than 15 grams of cocaine)

- 10-CF-39 (delivery of more than 1 gram but less than 15 grams of cocaine)

- 10-CF-317 (manufacturing or delivery of an unspecified amount of cocaine)

- 10-CF-689 (possession with intent to deliver 8.5 grams of crack cocaine)

In the state of Illinois, cocaine is a Schedule II substance. 720 ILL. COMP. STAT. 570/206 (2018). Under Illinois law, a violation of 20 ILL. COMP. STAT. 570/401 involving more than 1 gram but

18

less than 15 grams of cocaine is a Class 3 felony. 20 ILL. COMP. STAT. 570/401(e) (2018). Class 3

felonies are punishable by no less than two years in prison. 730 ILL. COMP. STAT. 5/5-4.5-40

(2017).

When the Court sentenced Snowden, he had *five* (i.) prior convictions, (ii.) as an adult,

(iii.) that were a controlled substance violation under state law, (iv.) punishable by one year or

more in prison. As Snowden had five qualifying convictions when only two are sufficient to

apply the enhancement, Snowden satisfies the criterion for a Chapter Four enhancement. There is

no indication that Chapter Four enhancement was erroneously assigned.

If a defendant satisfies the criterion for a Chapter Four enhancement, with immaterial

exceptions, Chapter Four prescribes an offense level corresponding to the statutory maximum for

the crime of conviction. Next, Probation calculates the defendant's adjusted offense level

subtotal for the crime of conviction (including offense enhancements). After calculating the

offense level subtotal, Probation compares that offense level to the offense level prescribed by

the Chapter Four enhancement. Then, Probation assigns the defendant with whichever offense

level is higher.

Snowden was convicted on two counts of conspiracy to distribute (Count 1) and

distribution (Count 2) of 50 grams or more of methamphetamine, or 500 grams or more of a

mixture of substance containing methamphetamine. (Docs. 83, 275). Both of Snowden's

convictions carry a maximum term of life in prison. 21 U.S.C. § 841(b)(1)(A)(viii). Because

Snowden's convictions carry a maximum term of life in prison, the Chapter Four enhancement

prescribes him an offense level of 37. Probation calculated Snowden's adjusted offense level

subtotal to be 34. Because Snowden's prescribed offense level for the Chapter Four enhancement

is greater than his adjusted offense level subtotal, Probation assigned Snowden an offense level of 37. Consequently, even if the specific offense enhancement for the gun was improperly applied—and there is no indication that it was improperly applied—that enhancement is irrelevant. Snowden was not "enhanced twice." Rather, he erroneously interprets Probation's calculation of his adjusted offense level subtotal with the firearm enhancement as "stacking" on top of his Chapter Four enhancement when, in reality, only the Chapter Four enhancement applied.

As the enhancements were properly applied, neither of his attorneys were ineffective for not objecting to the calculation. As a result, this claim is also frivolous.

### C.  **Snowden's Other Claims**

Snowden's most recent filing in this case provides twelve claims that he believes demonstrates his counsel was ineffective. However, Snowden intended this recent filing to also supplement his initial petition, the one that he withdrew after the Court entered an order to show cause. (Doc. 1). That initial petition lists several other claims that are similarly meritless. In a similar pattern, Snowden takes issue with the Court's findings at trial—again, a § 2255 petition is an improper forum for re-litigating a case. Therefore, these claims are meritless.

### D.  **Snowden's Claims Generally**

It is clear from his filings that Snowden wants to judge his attorneys' effectiveness based on the results; however, the result of a case does not determine whether counsel was effective. Snowden wishes to engage in Monday morning lawyering—he wants to hold his attorneys responsible for unsuccessful legal arguments and hold them responsible for not making the arguments he believes they should have made; the Court will not indulge him. Strategic legal

decisions are the domain of the attorney, not the client.

In some ways Snowden's arguments as to his appellate counsel are new; in other ways, his arguments are the same. Similar to his trial counsel, he argues his appellate counsel was ineffective for failing to raise arguments that he wanted to raise and failing to make arguments that he believed would have prevailed. The attorney-client relationship binds the attorney to act in the best interests of their client. As someone not trained in the legal profession, clients are generally not in the best position to dictate what their counsel should and should not argue, nor what arguments they should and should not raise. Strategic decisions and professional judgments on what to raise and their likelihood of success are the purview of the attorney, not the client. Indeed, clients can and do demand that their attorneys file frivolous motions and make meritless arguments. The attorney is *obligated* to refuse these demands. Clients may bristle at their attorney's refusal, but generally the client is free to seek legal representation elsewhere. In cases of appointed counsel, as here, the ethical obligations of the attorney remain unchanged. While defendants are entitled to effective assistance of counsel, they are not entitled to the counsel of their choice or counsel that will follow their every whim. His attorneys' decisions not to advance frivolous arguments do not make them ineffective.

Snowden also wishes to hold his attorneys responsible for the Government's charging decisions. Suffice it to say, his attorneys are not responsible for his criminal acts, nor how the Government chooses to charge those criminal acts. Snowden, not his attorney, is responsible for his conviction. The common theme in Snowden's relentless filings is that everyone is at fault for his present situation, except for himself. Snowden is serving a long prison term, but he will eventually be released. If he wishes to successfully reintegrate after prison, it would behoove him

21

to take responsibility and accountability for his actions rather than persisting in a relentless campaign of finger pointing.

According to the Habeas Rules, Habeas petitions are screened. If it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion and direct the clerk to notify the moving party. Here, it is plain to see that all of Snowden's claims are meritless and that he is not entitled to the relief.

## IV.   <u>CONCLUSION</u>

Snowden's motion to vacate the judgment of dismissal without prejudice and to revive his motion for § 2255 is **GRANTED**. The judgment vacating dismissal without prejudice is hereby **VACATED**. Snowden's motion to supplement his § 2255 is **GRANTED**. Snowden's motion for appointment of counsel is **DENIED**. Snowden's motion for an expedited evidentiary hearing is **DENIED** because it plainly appears that his § 2255 lacks merit. As his § 2255 is plainly meritless, based on the documents, exhibits, and record; Snowden's § 2255 is hereby **DENIED** and the Court **DECLINES** to issue a certificate of appealability. The Clerk of Court is **DIRECTED** to enter judgment accordingly.

**IT IS SO ORDERED.**
**DATED:   July 12, 2024**

*s/ J. Phil Gilbert*
**J. PHIL GILBERT**
**DISTRICT JUDGE**

22